UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTICT OF MICHIGAN
SOUTHERN DIVISION

ROMEL DAVIS-HUSSUNG,

                    Plaintiff,          Civil Action No.: 14-14964
                                        Honorable Bernard A. Friedman
v.                                      Magistrate Judge Elizabeth A. Stafford

JEFFERY LEWIS, *et al*.

                    Defendants.
_____/

## REPORT AND RECOMMENDATION THAT DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [R. 30] BE GRANTED

### I.    INTRODUCTION

Plaintiff Romel Davis-Hussung brings this action pursuant to 18

U.S.C. § 1983, alleging violations of his constitutional rights while he was

detained in Saginaw Correctional Facility.[1] Defendant Wayne M. Groat,

Administrative Law Examiner, was granted summary judgment. [R. 41].

The remaining defendants now move for summary judgment, arguing that

these claims should be dismissed based on qualified immunity. [R. 30]. The

Court agrees and **RECOMMENDS** that the defendants' motion be

**GRANTED**.

_____

[1] The Honorable Bernard A. Friedman referred the case to the undersigned
to resolve all pretrial matters pursuant to 28 U.S.C. § 636(b)(1)(A) and (B).
[R. 29].

## II.    BACKGROUND

Davis-Hussung's allegations stem from an incident occurring on April 9, 2014, in which he was cited for "sexual misconduct" after engaging in "horseplaying" with his cellmate and, after being directed to stop, exchanging insults with Corrections Officer Jeffrey Lewis. [R. 1, PgID 4]. He claims that Officer Lewis became angry and, together with Shareese Gillerson and an unnamed sergeant, escorted him to segregation and wrote him a sexual misconduct ticket that falsely alleged that he and his cellmate were rubbing each other's legs. [*Id.*]. He also claims that Assistant Resident Unit Supervisors (ARUS) Dean Potila and Todd McLean insulted him with comments regarding his sexual orientation; that Potila had him transferred to Chippewa Correctional Facility against his will; and that Corrections Officer Margret Anderson, along with Officers Gilerson and Lewis, distributed his sexual misconduct report among multiple inmates, which resulted in his being stabbed thirteen times by five inmates. [*Id.*, PgID 5]. Defendants deny all claims. [R. 30-2 to 30-14].

## III.    ANALYSIS

Federal Rule of Civil Procedure 56 provides that "[t]he Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a

2

matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment bears the initial burden of informing the Court of the basis for its motion, and must identify particular portions of the record that demonstrate the absence of a genuine dispute as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In deciding a summary judgment motion, the Court must view the factual evidence and draw all reasonable inferences in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88(1986).

### A. Vicarious Liability in § 1983 Suits

While the Court accords some leniency to pleadings drafted by *pro se* litigants, "[t]he leniency granted to pro se [litigants] ... is not boundless." *Martin v. Overton*, 391 F.3d 710, 714 (6th Cir. 2004). Indeed, such complaints still must plead a plausible claim for relief. *Davis v. Prison Health Services*, 679 F.3d 433, 437-38 (6th Cir. 2012). When alleging a constitutional violation under 42 U.S.C. § 1983, a claimant must establish that each defendant is "personally involved" in the alleged violation, or that he or she "encouraged or condoned others in doing so." *Copeland v. Machulis*, 57 F.3d 476, 481 (6th Cir. 1995). "A plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution" in order to sustain a § 1983 claim. *Ashcroft v.*

3

*Iqbal*, 556 U.S. 662, 676 (2009).

Here, Davis-Hussung has made no allegations against the following defendants: ARUS Kelly Buczek, Prison Counselor Yvonne Gorton, Resident Unit Manager (RUM) James Zummer, Corrections Program Coordinator Daniel Hoffman, Manager Richard Russell, Assistant Deputy Director Lloyd Rapelje, Warden O'Bell Thomas Winn, and Deputy Warden Donald Ricumstrict. [R. 1]. Davis-Hussung may be attempting to assert *respondeat superior* or vicarious liability for these defendants; however, such claims cannot be the basis for liability under § 1983. *Skinner v. Govorchin*, 463 F.3d 518, 525 (6th Cir. 2006). Therefore, summary judgment should be granted to these defendants, and claims relating to Davis-Hussung's allegations in this matter should be dismissed with prejudice against these defendants.

## B. Exhaustion

A prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust all "available" administrative remedies prior to bringing suit.  42 U.S.C. § 1997e(a).  *See Jones v. Bock*, 549 U.S. 199, 218-20 (2007); *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731 (2001). Requiring exhaustion allows prison officials an opportunity to resolve disputes concerning the exercise of their

4

responsibilities before being haled into court and produces a useful administrative record. *Jones*, 549 U.S. at 204.  Defendant bears the burden of production and persuasion on the issue of exhaustion.  *Surles v. Andison*, 678 F.3d 452, 458 (6th Cir. 2012).

The PLRA requires proper exhaustion, meaning that a prisoner must comply with the applicable grievance system. *Woodford v. Ngo*, 548 U.S. 81, 93 (2006); *Jones*, 549 U.S. at 218. The content of the grievance must be adequate to give prison officials fair notice of the alleged misconduct or mistreatment about which the prisoner complains. *Bell v. Konteh*, 450 F.3d 651, 654 (6th Cir. 2006). "[T]he primary purpose of a grievance is to alert prison officials of a particular problem." *Newson v. Steele*, No. 09-10346, 2010 WL 3123295, at *4 (E.D. Mich. July 1, 2010), *report and recommendation adopted*, 2010 WL 3123288 (E.D. Mich. Aug. 9, 2010).

The Michigan Department of Corrections ("MDOC") Policy Directive 03.02.130 sets forth a three-step procedure that prisoners must follow in order to exhaust grievances.  *See* Policy Directive 03.02.130 (effective July 9, 2007).[2]  Defendants have provided a record of Davis-Hussung's Step III grievance report. [R. 30-16]. It lists five grievances, two of which are

---

[2] The Policy Directive is available at:
https://www.michigan.gov/documents/corrections/03_02_130_200872_7.pdf

5

resolved and three of which are unresolved. [*Id.*, PgID 181-82]. Defendants also include records of the two Step III grievances which have been resolved. [*Id.*, PgID 183-95]. Those grievances are unrelated to the allegations here. Thus, defendants conclude, Davis-Hussung cannot have exhausted his available administrative remedies before bringing suit.

Davis-Hussung argues that he has attempted to file multiple grievances while confined in segregation, and that they went unanswered [R. 35, PgID 205-06]. He provides copies of Step I grievances that may or may not have been filed. [*Id.*, PgID 213-15]. Interestingly, he has provided the same number of grievances that defendants' records show as unresolved grievances at the Step III stage, but the dates listed as being received at Step I do not match the dates on Davis-Hussung's records.

Unfortunately, defendants did not reply to the allegations in Davis-Hussung's response, specifically that he had attempted to and was prevented from filing grievances on three separate occasions relating to the alleged constitutional violations in this matter. Because Davis-Hussung provides evidence of grievances that were filed on this matter from April, 2014 that do not seem to appear on his Step III grievance report, and because he alleges to have been interfered with in filing these grievances, a genuine dispute exists as to the whether Davis-Hussung was denied

6

access to the grievance process.  "If Plaintiff were improperly denied

access to the grievance process, the process would be rendered

unavailable, and exhaustion would not be a prerequisite for initiation of a

civil rights action." *Hawkins v. Norwood*, 2010 WL 3398793, at *10 (W.D.

Mich. Aug. 25, 2010) (citing *Lewis v. Casey*, 518 U.S. 343 (1996).

Therefore, summary judgment should be denied on the matter of

exhaustion.

### C. Qualified Immunity

The defendants against whom specific allegations were made by

Davis-Hussung are entitled to qualified immunity and summary judgment

should be entered in their favor. Determining the applicability of qualified

immunity requires a two-step inquiry into whether the facts, when viewed in

the light most favorable to the plaintiff, would permit a reasonable juror to

find that: (1) the defendant violated a constitutional right; and (2) the right

was clearly established. *Estate of Carter v. City of Detroit*, 408 F.3d 305,

311 (6th Cir. 2005). "A clearly established constitutional violation requires

on-point, controlling authority or a robust consensus of cases of persuasive

authority." *Ortega v. U.S. Immigration and Customs Enforcement*, 737 F.3d

435, 439 (6th Cir. 2013).  In the Sixth Circuit, a constitutional violation is

established by binding precedent from the Supreme Court or this circuit,

and a court should look beyond those precedents only in extraordinary cases. *Walton v. City of Southfield*, 995 F.2d 1331, 1336 (6th Cir. 1993) *superseded by statute on other grounds as stated in Livermore ex rel. Rohm v. Lubelan*, 476 F.3d 397, 407–08 (6th Cir.2007).

"The burden of convincing a court that the law was clearly established 'rests squarely with the plaintiff.'" *Key v. Grayson*, 179 F.3d 996, 1000 (6th Cir. 1999) (quoting *Cope v. Heltsley,* 128 F.3d 452, 459 (6th Cir.1997)). This analysis is not rigid and inflexible, and a court may begin and end its inquiry with an analysis of the "clearly established" prong if this would lead to a conservation of judicial resources. *Pearson v. Callahan*, 555 U.S. 223 (2009). Here, defendants are entitled to qualified immunity on each claim either because Davis-Hussung has not stated a violation of a constitutional right or such a right was not clearly established.

### 1.   False Misconduct Ticket

Davis-Hussung cannot sustain his claim that he was falsely cited for "sexual misconduct" because "[f]alse accusations of misconduct filed against an inmate do not constitute a deprivation of constitutional rights where the charges are adjudicated in a fair hearing." *Jackson v. Madery*, 158 F. App'x 656, 662 (6th Cir. 2005). Here, Davis-Hussung acknowledges that he had a hearing before a hearing officer and was found guilty. [R. 1,

8

PgID 4].

Davis-Hussung does claims that the hearing officer treated him unfairly by cutting off his testimony, being disrespectful and showing bias, [*Id.*], but he does not allege any facts or provide any evidence to show that he was treated in a manner that denied him due process.  For prison disciplinary matters, due process requires: "(1) advance written notice of the disciplinary charges; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and (3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action."  *Superintendent, Massachusetts Corr. Inst., Walpole v. Hill*, 472 U.S. 445, 454 (1985).  Davis-Hussung does not allege that any of these requirements were unmet.

### 2.   *Mistreatment for Perceived Homosexuality*

Davis-Hussung faces similar factual and legal barriers to his claim that he was mistreated due to the officers' belief that he was in fact homosexual. Factually, Davis-Hussung has never claimed to be homosexual.  In fact, he claims just the opposite in the affidavit in support of his motion for a court ordered polygraph test, stating that he is a "full Heterosexual." [R. 37, PgID 224]. Legally, although the Fourteenth

9

Amendment provides protections for members of protected classes, homosexuals have not been recognized as one. *Ondo v. City of Cleveland*, 795 F.3d 597, 609 (6th Cir. 2015). The Supreme Court was recently asked to declare homosexuals a protected class, and it declined. *Id.* (citing *Obergefell v. Hodges*, 135 S. Ct. 2584, 2602 (2015)).

### 3.    Harassing Remarks

Defendants ARUS Potila and ARUS McLean are also entitled to qualified immunity for claims that they insulted and made derogatory remarks to Davis-Hussung. In *Johnson v. Unknown Dellatifa*, the Sixth Circuit stated that the Eighth Amendment was not implicated where a guard banged on the plaintiff's cell door, threw food trays, made aggravating and insulting remarks, and behaved in a racially prejudicial manner toward the plaintiff. 357 F.3d 539, 545-46 (6th Cir. 2004). Such "harassment and verbal abuse, such as Johnson has described, do not constitute the type of infliction of pain that the Eighth Amendment prohibits." *Id.* The same analysis applies to the allegations against Potila and McLean.

### 4.    Segregation and Transfer

Davis-Hussung complains about being placed in segregation and transferred to Chippewa Correctional Facility. These claims fail to establish the violation of clearly established rights because mere changes in the

10

conditions of confinement do not violate due process rights. *Neal v. Ellis*, 2010 WL 5467485, at *7 (W.D. Mich. Dec. 30, 2010) (citing *Meachum v. Fano*, 427 U.S. 215, 225 (1976)). A prisoner's Fourteenth Amendment due process rights are violated only when "the sanction 'will inevitably affect the duration of his sentence' or when a deprivation imposes an 'atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" *Id.* (quoting *Sandin v. Conner*, 515 U.S. 472, 486–87). Here, the segregation is not alleged to have affected the duration of Davis-Hussung's sentence, and it is not an atypical or significant hardship. As to the transfer, it is clearly established that "prisoners do not have a constitutional right to be incarcerated in any particular institution." *Id.*, citing *Meachum*. The expectation a prisoner may have in remaining at one particular institution is "too ephemeral and insubstantial" to rise to the level of a constitutional right. *Meachum*, 427 U.S. at 228. Consequently, Davis-Hussung has not established that a clearly established due process right has been violated.

### 5.   *Retaliation*

Davis-Hussung's allegations also fail to state a clearly established First Amendment claim of retaliation.  "A retaliation claim essentially entails three elements: (1) the plaintiff engaged in protected conduct; (2) an

11

adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two—that is, the adverse action was motivated at least in part by the plaintiff's protected conduct." *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999).  Here, Davis-Hussung alleges that he was retaliated against by receiving a sexual misconduct ticket and being placed in segregation, transferred and slandered because he told Officer Lewis, "Don't fucking play with me, bring your wife in here and I'll throw the sheet up."  [R. 1, PgID 4; R. 35, PgID 213-14]. That statement constitutes "insolence" under MDOC policies, and is not protected by the First Amendment.  *Lockett v. Suardini*, 526 F.3d 866, 874 (6th Cir. 2008) (words or actions that are intended to "harass, degrade, or cause alarm in an employee" constitute insolent behavior that is not protected under *Thaddeus-X*).

## 6.    *Distribution of Misconduct Report*

The allegations that are most troubling to the Court, if true, are those that Davis-Hussung's sexual misconduct report was distributed to inmates at various facilities, ultimately resulting in Davis-Hussung being stabbed multiple times while interred at Kinross Correctional Facility. Defendants deny these allegations with affidavits.  As much as these allegations trouble

12

the Court, it cannot find that they violate a clearly established constitutional right.

It is well established that prison officials have a duty to "protect prisoners from violence at the hands of other prisoners." *Farmer v. Brennan*, 511 U.S. 825, 833 (1994). However, Davis-Hussung has not shown and the Court has been unable to find binding precedent from the Supreme Court or Sixth Circuit establishing that a prison official violates an inmate's constitutional rights by distributing inflammatory information, even when that acts results in the inmate being harmed by other inmates. Additionally, this is not an extraordinary case such that the Court should look beyond Supreme Court and Sixth Circuit precedent, because the courts finding a violation for these type of allegations are few.

In *Thomas v. D.C.*, 887 F. Supp. 1, 3 (D.D.C. 1995), an inmate alleged that an officer spread rumors that the inmate was a homosexual and a snitch, causing him to be confronted and threatened by other inmates. In finding that this violated the plaintiff's Eighth Amendment rights, the court stated, "[i]n the prison context in which Mr. Thomas was required to live, one can think of few acts that could be more likely to lead to physical injury than spreading rumors of homosexuality and informing on one's co-defendants." *Id.* at 4.

This decision has been cited approvingly by some lower courts (*see e.g., Montero v. Crusie*, 153 F. Supp. 2d 368, 377 (S.D.N.Y. 2001)), but the rule has not been widely adopted, cited by any federal circuit court, cited by any district court in this circuit, or referred to by any court as a clearly established right. Thus, it should not be recognized as one here. As Davis-Hussung has failed to establish the violation of any clearly established right, summary judgment should be granted to the defendants.

### D. CONCLUSION

For the foregoing reasons, it is recommended that the defendants' motion for summary judgment based on qualified immunity be **GRANTED**.


s/Elizabeth A. Stafford
ELIZABETH A. STAFFORD
United States Magistrate Judge

Dated: January 21, 2016


## NOTICE TO THE PARTIES REGARDING OBJECTIONS

Either party to this action may object to and seek review of this Report and Recommendation, but must act within fourteen days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v.*

14

*Secretary of HHS*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that party might have to this Report and Recommendation.  *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  A copy of any objection must be served upon this Magistrate Judge.  E.D. Mich. LR 72.1(d)(2).

Each **objection must be labeled** as "Objection #1," "Objection #2," etc., and **must specify** precisely the provision of this Report and Recommendation to which it pertains.  Not later than fourteen days after service of objections, **the non-objecting party must file a response** to the objections, specifically addressing each issue raised in the objections in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc.  The response must be **concise and proportionate in length and complexity to the objections**, but there is otherwise no page limitation.

15

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on January 21, 2016.

s/Marlena Williams_____
MARLENA WILLIAMS
Case Manager

16